The first case is 19-9513 Bokole Umba v. Barr. Counsel, if you're ready to proceed, we're ready to hear you. Good morning. Good morning, judges. My name is, may it please the court, and Ms. Camilleri, I hope I said that correctly. My name is William Schwartz, and along with my daughter, we are appearing today as court-appointed counsel on behalf of the petitioner, Du Bokole Umba, a citizen of the Democratic Republic of the Congo. The legal issue here today is the IJ's non-credibility determination, supported by substantial evidence, giving due consideration to the totality of the evidence. But the real issue, the deep issue, frankly, the far more interesting issue, is about the relationship between two young refugees from the DRC, Bokole and Hermans. What was their relationship, and what was it not? And most fundamental, what bearing should the IJ's view of the relationship have on Bokole's qualifications for asylum status in the United States? Now, briefing goes into quite a lot of detail, addressing several problems, both substantive and procedural, about the IJ's decision and the BIA's affirmance. But I want to focus our time today on that relationship, and particularly on three fundamental errors in the IJ's treatment of the relationship. Number one, the decision is based on a false premise about the relationship that is contrary to the evidence. Relatedly, point number two, the decision is based on the IJ's improper conjecture and speculation about the relationship, which is drawn from the false premise. And finally, number three, the decision gives improper weight to the relationship without giving proper regard to the very extensive and consistent evidence supporting Bokole's claims of persecution and torture in the DRC. Let me return to point number one. The decision is based on an unfounded premise about the relationship. As we know, DHS concluded Bokole was married to Hermione. That was wrong. The IJ, somewhat begrudgingly it seems, accepted the fact that they were not married, but instead concluded, well, they weren't married, but they, in effect, it was a tantamount to a marriage, because they were partners in life and politics. That is wrong. That is not what the evidence or the testimony revealed. The testimony was consistent that they were engaged in a light romance. Counsel, counsel, counsel, Judge Lucero, apart from the credibility issue, what is the relevance of the testimony, the findings on point, and your argument on point? Just seems to me substantially irrelevant. It sounds more like a romance novel than a court law. I mean, what's this all about? Well, it's, as this court held in the Unitaro decision in 2016, Unitaro versus Gonzales, that, cited by both parties in the brief, that case involved statements about a relationship, an IJ who made a conclusion that the asylum applicant couldn't be believed, in large part because of inconsistent statements between the asylum applicant and her mother about whether the asylum applicant was married. Exactly. My point being, can a credibility issue that does not go to the merits of the asylum claim, but to some tangential issue about social relationships, is it relevant? And can a determination be made on what would appear facially to be irrelevant considerations? It is relevant. It is relevant under the Real ID Act, I think. Okay, I would thought your answer was it was not relevant, but okay, I guess I don't understand your case. Go ahead. Sorry. Sorry, I asked a question. I think it is relevant to understanding who the party is. It's relevant to background. It's relevant to... What is it relevant to? I would say it's not material, your honor. That is the distinction I would make. All right. So let me make sure I understand what you're saying. You're saying that this business of untruthful in one thing, untruthful in all things, and you're talking about the untruthful in one thing. We're starting off with whether or not the two of them lied in some fashion about their relationship. Yes. But let's assume they did, or that at least there's substantial evidence that there is. What the IJ says in IJ's order is something to the effect of that bleeding across, that the IJ might well have found that there was persecution, as well as a threat of future persecution, except for where the IJ believed that they hadn't been truthful about the relationship or whatever else. Is that proper for the IJ to rule in that regard? And maybe that's what Judge Nassar was asking. Yeah, it's exactly what I'm asking and much more articulately asked. Took a long time, though. I was trying to get there. And I think that is exactly one of the points, one of the problems with the decision is that after having reached that conclusion that he didn't believe the relationship, he's very candid that that was the basis for all else that flowed. He decided because he didn't believe the relationship, he did not believe the corroborating testimony from Hermantz. He did not believe any of the documentary evidence that was cards in the opposition political party, including statements from brothers and friends in the DRC that he had been persecuted, arrested and tortured, included the country condition statement. All of that, all of that was disregarded because he didn't believe the relationship. Now, that is. And also, may I correct you on one point? Yes. I don't think he said he didn't believe this other evidence. I think what he did is he said he was going to disregard it because of the credibility issue with the relationship. I can't recall exactly how he stated it, but he did not give it credence because it was offered by somebody who he did not find credible. Going back to the Unerero decision where the marital relationship testimony was so heavily relied upon in the IJ in rejecting her credibility, this court said, consideration of all relevant factors, which is what the REAL ID Act requires, consideration of all relevant factors cannot mean ignoring the claim itself, including the applicant's testimony about her reasons for fearing persecution in the objective circumstances in the applicant's home country. Therefore, while it is appropriate for the IJ to consider Unerero's entry as a factor in its credibility determination, it alone does not rise to the level of substantial evidence to support an adverse decision on her claims for relief. That, Judge Lucero, I think is going exactly to the point you're making. The same is true in the Nzingh V. Holder case, a decision from this court in 2013 that the agency can't ignore the documentary evidence and reject an asylum claim solely on credibility grounds. Counsel, I mean, assuming that this relationship testimony is far afield or somewhat afield from the question of whether he had a valid asylum claim based on his experience in Nigeria, is it, um, are you saying that there's not a case where somebody could have been on sort of tangential matters so evasive or untruthful that the IJ couldn't just completely disregard their testimony? I think that there could be such a case. I think, as I was saying to Judge Lucero, I'm not saying that this was not relevant to the credibility determination. I think it is somewhat relevant, but I think what the problem with it is, is that it was relied upon to the exclusion of the great weight of the rest of the testimony. So, that is one of the major problems I see with it, but as I was prepared to argue, the basic conclusion that you couldn't believe this relationship is also very flawed because the IJ simply concluded that they had a relationship that they didn't even purport to have. He says they presented, Bokole presented himself and Hermans as being partners in life and politics. That's not at all what they said. They, they, they, these two saw each other rarely. She lived with her parents. Um, her father was opposed to the relationship. There's no indication that they had a sort of an American-style social media relationship with their friends, and they would go out to clubs. This was a Congolese-Kinshasa relationship where Bokole was several years older than this woman, and they didn't know that much about each other, and yet the IJ concluded you had this kind of, you presented yourselves as having this kind of relationship, and if you had that kind of relationship, here's the conjecture. If you had that kind of all these details about your friends and the harm you each suffered in the DRC, and because you didn't know those things, or you couldn't remember them, I don't believe you. Well, that's a neat trick. You, you, you, you construct this false relationship and then disbelieve the relationship and call the, the parties liars after you've constructed the relationship in the first place. Um, so not only is it not supported by evidence, it, it wasn't a fair conclusion. I, I would like to, uh, reserve a few minutes for rebuttal, and I see I'm in my rebuttal time. Thank you. Thank you. Good morning. May it please the court, this is Dana Camilleri for the Attorney General. This case is about credibility. Petitioner's failure to challenge the demeanor finding and the finding that parts of his claim concerning his travel to the United States were implausible should be fatal to the petition for review. Even assuming that failure was not just positive. Petitioner has not pointed to anything in the record to compel a different result. What's implausible? What is implausible about his travel to the United States? Well, your honor, in his initial credible fear interviews, of which there were three, uh, he testified that he saw her man in Brazil, that they met up in Brazil. Then they both testified at the mayor's hearing that they met up in Costa Rica, but that they both left Brazil on the same day. And when questioned about this inconsistency, he became evasive and non-responsive. Much of what in terms of the immigration judge supposedly manufacturing this serious relationship, that came from petitioner during his credible fear interviews when he was under oath, and he says that they lived together in DRC and that she knew his kids and acted as a mother to his kids. Um, and that's the thread that he presented there that then he completely dropped and their testimonies are inconsistent with each other, um, at the mayor's hearing. And again, that unchallenged demeanor finding that I believe in the reply brief petitioner doesn't even acknowledge, uh, is all, all forms substantial evidence to find him not credible. Council, as I, as I read the petitioner's argument, they say that these credible fear interview notes are not reliable and that we shouldn't rely on those. Do you have any case law that says it's appropriate for us to rely on those credible fear interview notes? Um, I, I do. I did just 28 J a fifth circuit published case. Uh, I believe it was published, but, um, on that effect, but also even if I believe petitioner is urging this court to adopt a test similar to that of the seventh circuit in Moab. Um, and even if the court did look at those factors in conjunction with what the board has laid out at JCHF, these credible fear interview notes do have the addition of reliability and should be considered. And just if you humor me for a minute, the seventh circuit in Moab said that, um, if it's a paraphrasing and not incomplete sentences is less reliable here. We have question and answer format as in full and complete sentences where the interview was not about an asylum claim. Well, this was a credible fear interview whose express purpose is to assess whether he has a valid credible fear and should no longer be an expedited removal proceedings. If the alien is reluctant to reveal information due to prior coercion by CBP agents. No, there's no allegation of that here. And then whether there's evasive fears where true fear of governmental authority does not necessarily mean no credible fear, but here he's not evasive. He says he acknowledges throughout each of these interviews that he understands the interpretation, that he understands that he can ask questions if he has them, and then he's comfortable answering these questions. And so with all those things taken together, and even if we did, even if this court decided to adopt these other tests, the I two 13 note, or excuse me, the credible fear interview notes should be considered. And once those come in, it's very clear that there's some inconsistencies and some contradictions here that do constitute substantial evidence in support of it. Adverse credibility findings. He ever given an opportunity to review those and sign. And if not, then what good are they? Well, your honor, their memorialization of his part prior sworn statements made to an asylum officer who sold someone says, but you haven't told me yet. Was he allowed to review them and sign your honor? I don't have any evidence of that, but that is he, they found him to have a credible fear. He was given the opportunity to respond when they said, well, this is what you said in the credible fear interview. And that's when the immigration judge makes an explicit demeanor finding that again is unchallenged. And the immigration judge was in the best position to see that he became evasive. He would not answer the questions directly. Additionally, by demeanor, because I saw that in the brief and I've read the transcripts and I don't see where the IJ said anything about what I understand demeanor to be. Your honor, it's on page 14 of the IJ decision. In some further respondent was extremely evasive in many of his answers, particularly when presented with questions or confronted with discrepancies. Uh, that entire paragraph is actually a very typical demeanor finding. And you'll see that the board explicitly accorded deference to it on page three in the third paragraph of its decision. And our, our position is that that, that is a clear demeanor finding, um, under the case law. And that has, that hasn't been challenged, but more importantly, he was given the opportunity, uh, to respond when confronted with these inconsistencies and he really failed to do so. And I also want to point out, um, petitioners council Senate 28 J with an unpublished case, uh, regarding, uh, an I two 13 admissibility. And, uh, what that panel looked at was that there were two separate officers or an interpreters involved memorializing that we have two separate, it is the same asylum officer, but there's two separate Lingala interpreters for the bulk of these credible fear interview notes. So to, to say that two interpreters just completely messed up. And that's the only explanation without taking into consideration that even his testimony at his merits hearing was inconsistent with the things that her mom said. So there, there is a lot here that forms substantial evidence. Yeah. Oh, go ahead. Oh, you go ahead. Judge Phillips and I'll break in after you. All right. Uh, and I realized that you were going to say, this isn't what happened, but I'm asking a hypothetical. If an IJ said, I don't believe this about their relationship. And even I believe they traveled together from that, from the DNC and whatever else, whether there's any evidence to support that. But at the same time, you've offered to show me scars on your leg from stabbings. You have been remarkably consistent throughout all of this, as far as the persecution and the torture. So I think you probably were persecuted and tortured, but on the other hand, you weren't truthful with me about the girlfriend. So I'm going to deny asylum. Would you say that the IJ had acted correctly under the law? This as a hypothetical, yes, after the Real ID Act, it doesn't have to go to the heart of the claim. And here I, we can speculate as to why someone would, why I am. Whether or not an IJ can defeat asylum, despite finding past and a future threat of persecution based on something else. Namely, I don't think you were truthful with me about where, where in Central America or South America, you ran into your ex-girlfriend. Well, Your Honor, I would say that more than that happened here in terms of the inconsistencies. I'm not sure. It depends on the facts of the hypothetical. There's also no corroboration in the record about the scars on his leg. I did not see that in the record here. Well, he offered, I know that that's been challenged, but I'm looking at page 119 of the transcript and he talks, he's being cross-examined about the scarring, the stabbing. And he says, the first one was really bad. If you can, there's an opportunity for me to come and even show you how bad it was. He offers that up to the prosecuting attorney or the government attorney. But I, I just want you to tell me, and if you can't, that's okay. I don't mean to push you into something that you're uncomfortable with, but do you say it's okay for the IJ to conclude there was persecution, there will be persecution, but you lied to me about the girlfriend, so asylum denied? I'm honestly not sure under those circumstances, because the point of the Real ID Act is that you don't have to look at the heart of the claim, but it still requires substantial evidence, which, which I say is, is present here, but it still requires some evidence of, that the alien is not being credible and is not being forthright in his claim. Let me ask a related question, if I may, Judge Carson, because I know you've got a question pending. And my question is, is there anything in the record, apart from the credibility finding regarding the girlfriend, that disabuses or contradicts the testimony regarding torture and the related issues that Judge Phillips asked you about? In other words, if we reject the finding regarding credibility regarding the girlfriend, is there anything in the record that contradicts his remaining allegations? I wouldn't say so, but I will say that it, in terms of the inconsistent statements, yes, they are surrounding the hermance, but she's presented as someone who's supposed to corroborate his claims. And so it's... My question, counsel, asks you to disregard all the testimony regarding the girlfriend and her corroboration. Is there anything in the record that we can look at objectively to determine, considering the totality of the remaining circumstances, whether they are true or not true? I can't think of anything specific. Thank you. And I'm like Judge Phillips, I don't want to push you. You think of something, but please go ahead and tell us. But meanwhile, I interrupted, not interrupted, but I stepped on Judge Carson's prerogative. So, Judge Carson. Thank you. So, I guess the first thing I want to drill down on is, was there a finding, an actual finding by the IJ that there was persecution and torture and would be persecution and torture if asylum was denied here? No, I think the immigration judge took the perspective that because there were these inconsistencies surrounding the travel and the situation with Hermans and the prior sworn statements, that his entire story could not be credited. So, that sort of brings me to the next step is, was it... If there weren't all these... I'm not saying there were inconsistencies or yay or nay, but if there were not inconsistencies and credibility problems, then I would have found there was past persecution and torture and would be persecution and torture if he was returned. Is that more in line with what the IJ found? I can't really speak for the immigration judge. My reading of the agency is that they disbelieve the entire story. I think if I were presented with a hypothetical without the credibility issues, we could all agree that if this story is true, the problem is that because of all these inconsistencies and contradictions, you can't credit the story. That's the agency's position. Okay. And so, the other thing I wanted to ask you was about his girlfriend's testimony, Hermans' testimony. I mean, her purpose was to corroborate his story, correct? And how does he fare without that corroboration? Take her out of it. Let's assume that that testimony never came in. I mean, where is he as far as corroboration goes without her testimony? He has some documentary evidence, which has been pointed out. He did, his sister, Pascaline, sent this arrest warrant, but he couldn't testify to any specifics to it. And it also sort of undercuts this cultural differences explanation because, you know, on the one hand, he can't remember or he's not sure Pascaline introduced them. And in the credible fear interview, he says his brother's attended school with her and nobody talks to procuring this arrest warrant if she doesn't know anything about it. They don't talk. And then it's just his testimony. Can I ask you, does the government agree that Bacole and Hermans' had no ability to speak to each other after they were separated at the border, one to El Paso, one to New Mexico? I don't have a complete answer on that. They could have sent mail to each. I genuinely don't know the answer to that. It's possible they were not in communication. It's possible they were somehow able to send letters. I don't know the answer to that. I'm sorry. Thank you. If there are no further questions, thank you very much. Thank you, Counsel. And Counsel, you had a few minutes remaining. Go ahead, if you will. Thank you, Judge Lucero. We did submit this supplemental authority last week of a case that you authored about credible fear notes and the credible fear process. And I think it's quite relevant to this case. And you focused, of course, on reliability, fundamental questions of reliability and fairness, fairness to use these notes, when the purpose of the credible fear interview is it's supposed to be a screening exercise to determine whether the applicant is even entitled to get a hearing. The applicant is told about what this interview is about. It's about you telling us about what happened to you and do you have a credible fear of returning to your country? Counsel, do you feel like it's appropriate to use credible fear interview notes if they support the grant of asylum? I'd say that's up to each individual. Again, or in their attorney as to whether that's something they should feel is useful or not useful and how much weight it should be given. I'm just I'm just curious. I mean, it sounds like you want us to like you in it. Your briefing is takes on the idea that these notes are not credible. But I found in doing some have upheld, you know, the grant of asylum based on based on the consistency of the petitioner's petition or position is that where it was consistent with the interview notes. Certainly they have been used. They have been relied upon in other circuits, but they have to be looked at very carefully. And that's what Judge Lucero did in this case that we submitted. And in that case, even though the court concluded it was proper to use the credible fear notes, that was in many of these cases, you will see that it's stated that the interviewee, the claimant has had an opportunity to actually review the statement, sign it, initial the pages, just like you would expect in any sort of other sort of civil proceeding where testimony has been given. So I'm not suggesting the court just issue a rule that you can't use credible fear notes. But I am suggesting that perhaps you consider making a statement of law that credible fear notes that are not initialed or signed, or if there is not some evidence that the claimant had an opportunity to review what he is purported to have said and the questions that were purportedly answered to him. In the absence of that, they're suspect. And maybe you don't go to the full extent of saying they can't be used, but highlight the fact that that is a fundamental aspect of fairness. If somebody's state. Thank you, counsel. Unless my colleagues have further questions, your time is expired. Judge, could you indulge me for one more? Absolutely. Absolutely. Counsel, counsel, would you tell me, assuming you win, what happens next in your case? What's the what's the relief you want? Thank you for answering that question or asking that question the way you did. Yes, our client was deported based on this court's denial of his request for a stay, and this court denied the stay based upon the Supreme Court decision, indicating that people who have their petitions for review granted and who are deported are not irreparably harmed from the deportation because the government said in that Supreme Court case, we will facilitate bringing the party back. So not irreparable harm will facilitate you coming back. I'm concerned that that has not been occurring. I'm not a practitioner in this area of the law, but I've read that it's difficult to get clients back after they have won their petitions for review. And that being the case, I would request the court, if it is inclined to grant the petition, also make a statement to the effect that it expects the government in conformance with what was reported in the Supreme Court decision to facilitate the return to the United States for further proceedings. I would say, of course, that's going to be the case. I mean, the government is not playing games with the court. If you prevail, I'm sure the government will act in a reasonable fashion. I would also ask that the court consider retaining jurisdiction over the matter in the event that doesn't happen, Your Honor. I trust that you're right. I understand. Your time is up. Thank you very much. Was there any remaining time for the government? Did you have any 30 seconds, anything you want to say, Counsel? I realize it's got slightly formal procedure, but you have 22 seconds if you want to use them. Your Honor, just that we'll comply with whatever the court orders. All right. Thank you, Counsel. We appreciate the candor. The case is submitted. Counsel are excused.